**Alejo RAMOS, Osvaldo Garcia, Juan Del Rosario, and Andres Diaz, individually and on Behalf of all others similarly situated, Plaintiffs,**

**and**

**Francia Mendez, Hector G. Millet, and Hilda Santos, individually and on Behalf of all others similarly situated, Intervening Plaintiffs,**

**v.**

**FLAGSHIP INTERNATIONAL, INC., and Alan Mandel, in his capacity as General Manager, William Jones, George Wilkie and Tibaldo Rodriguez, in their capacity as Supervisors, Defendants.**

**No. 83 CV 683.**

United States District Court, E.D. New York.

June 19, 1985.

---

(i) all claims brought under 42 U.S.C. § 1981 on the ground that said statute is not applicable to national origin discrimination claims;

(ii) the claims of plaintiffs Andres Diaz, Juan del Rosario and Hector G. Millet under Title VII of the Civil Rights Act of 1964 on the ground that said claims are time-barred; and

(iii) the claim of plaintiff Alejo Ramos against George Wilkie, the claims of plaintiff Osvaldo Garcia against defendants William Jones and Tibaldo Rodriguez, the claim of plaintiff Juan del Rosario against defendant George Wilkie, the claim of plaintiff Andres Diaz against defendant George Wilkie, the claims of intervening plaintiff Francia Mendez against defendants George Wilkie and Tibaldo Rodriguez, the claims of intervening plaintiff Hector G. Millet against defendants William Jones, George Wilkie and Tibaldo Rodriguez, and the claims of intervening plaintiff Hilda Santos against defendants William Jones, George Wilkie and Tibaldo Rodriguez, all on the ground that said claims fail to state claims upon which relief may be granted.

Plaintiffs Alejo Ramos, Osvaldo Garcia, Juan del Rosario and Andres Diaz, and intervening plaintiffs Francia Mendez and Hector G. Millet are all former employees of the Sky Chefs Division of defendant Flagship International, Inc. Intervening plaintiff Hilda Santos is still employed by Sky Chefs.

Puerto Rican Legal Defense & Education Fund, Inc. by Kenneth Kimerling, Juan Cartagena, New York City, for plaintiffs and intervening plaintiffs.

Bigham Englar Jones & Houston by James B. McQuillan, Lisa J. Savitt, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

With respect to plaintiffs' amended complaint, defendants move for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "and the inherent power of the Court" dismissing

### I.

All the plaintiffs and intervening plaintiffs claim that they have been subjected to a pattern and practice of harassment and unequal terms and benefits of employment because they are Hispanic and because of race, color and/or national origin in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.

Section 1981 provides:

"All persons within the jurisdiction of the United States shall have the same

right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

In the amended complaint, plaintiffs Juan del Rosario and Andres Diaz and intervening plaintiffs Francia Mendez, Hector G. Millet and Hilda Santos allege that they are "non-white Hispanic[s]" and plaintiffs Alejo Ramos and Osvaldo Garcia allege that they are "Hispanic[s] of Cuban national origin."

Citing *Ben-Yakir v. Gaylinn Associates, Inc.*, 535 F.Supp. 543, 544–45 (S.D.N.Y. 1982); *Rios v. Marshall*, 530 F.Supp. 351, 360–61 (S.D.N.Y.1981); *Avigliano v. Sumitomo Shoji America, Inc.*, 473 F.Supp. 506, 514 (S.D.N.Y.1979), aff'd, 638 F.2d 552 (2d Cir.1981), *vacated on other grounds*, 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982); *Martinez v. Bethlehem Steel Corporation*, 78 F.R.D. 125 (E.D.Pa.1978); *Jones v. The United Gas Improvement Corp.*, 68 F.R.D. 1, 10–15 (E.D.Pa.1975), defendants argue that plaintiffs' claims are based on their "Hispanic national origin" and that § 1981 is not available for relief from discrimination based on national origin.[1]

As indicated above, only two of the plaintiffs, *i.e.*, Messrs. Ramos and Garcia, fail to allege that they are "non-white." Both of them, however, allege that they are "Hispanic" and add that they are of "Cuban national origin."

Various courts have advanced different theories in reaching the conclusion that Hispanics may sue under § 1981. Some have emphasized that they belong in essence to a non-white group. *See, e.g., Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968 (10th Cir.1979) (plaintiff of Mexican-American descent held to have a valid cause of action under § 1981 which is "directed to racial discrimination primarily, but is not necessarily limited to the technical or restrictive meaning of 'race'."); *Ortiz v. Bank of America*, 547 F.Supp. 550, 562–64 (E.D.Cal.1982) (the Court held that plaintiff of Puerto Rican descent had a valid cause of action under § 1981 and thus adopted the approach of *Manzanares*, after a lengthy survey of recent cases and legislative history); *Garcia v. Rush-Presbyterian-St. Luke's Medical Center*, 80 F.R.D. 254, 262–64 (N.D.Ill.1978), aff'd, 660 F.2d 1217 (7th Cir.1981) (Mexican and Mexican-American plaintiffs held to state a cause of action under § 1981 because in analyzing discrimination against these groups race, national origin and ethnicity may be indistinguishable). Others have permitted complaints by Hispanics to stand

---

1. Although defendants' cases literally state the proposition argued for, three of these cases are not factually analogous to the case at bar. For example, *Rios v. Marshall* involved a claim of discrimination against domestic migrant workers, Puerto Ricans and blacks, in favor of Jamaican foreign workers; *Avigliano v. Sumitomo Shoji America, Inc.* was brought by female clerical workers for discrimination against them in favor of Japanese nationals; and *Ben-Yakir v. Gaylinn Associates, Inc.* involved a white alien employee alleging discrimination against him as compared with American citizen employees.

The *Jones v. United Gas Improvement Corp.* case held that claims of Spanish surnamed individuals were claims of discrimination based on national origin and as such, not included within actionable claims under § 1981. While the Court in *Jones* did allow black plaintiffs their § 1981 claim, it is not clear to this Court if the Spanish-surnamed individuals might have had a

claim if they had argued that the discrimination they had allegedly suffered was racially based and not based on national origin.

The Court in *Martinez v. Bethlehem Steel Corp.* did rule that persons of Hispanic national origin are excluded from filing § 1981 claims but the Court qualified its rationale by stating that it perceived no "practical need" nor "logical reason" to extend the coverage of § 1981 because Hispanic persons can seek redress under Title VII and plaintiff in that case was doing so. Clearly, the fact that Hispanics may seek redress for discrimination under Title VII does not seem a sufficient rationale to rule that they, therefore, have no need for the rights possibly available to them under § 1981.

Finally, we note that the cases relied upon by the defendants are district level rulings, whereas many of the cases relied upon by plaintiffs, *see infra*, have been passed upon or issued by higher courts.

on the theory that they alleged discrimination of a racial character. *See, e.g., Bullard v. OMI Georgia, Inc.,* 640 F.2d 632, 634 (5th Cir.1981) (because distinction between national origin and racial discrimination is difficult to determine, plaintiff's allegations of racial discrimination were sufficient to survive a motion to dismiss; the Court held that "[a]n attempt to make such a demarcation before both parties have had an opportunity to offer evidence at trial is inappropriate."); *Apodaca v. General Electric Co.,* 445 F.Supp. 821, 823–24 (D.N. M.1978) (Spanish surnamed plaintiff granted leave to amend complaint pursuant to § 1981 to allege discrimination motivated by racial perception and animus).

■ Regardless of the historical reasons for the initial enactment of § 1981, the language contained therein is broad enough to encompass not just some citizens or legal residents of other national origin but all persons within the United States who are not accorded the same rights as are enjoyed by "white citizens."

Assuming, *arguendo,* that there are discrete identifiable citizens who are undeniably "white" within the meaning of such section, there are unquestionably innumerable groups and classes of individuals within this country who are or are perceived to be of various shades and degrees of "non-white" skin color.

In this Court's view, discrimination practiced against any of such group or class falls within the purview of § 1981. Groups based in national origin are not excluded.

It is a mistake to say that the Supreme Court has not "passed upon" this question. It has, albeit in a different context, in *United States v. Bhagat Singh Thind,* 261 U.S. 204, 43 S.Ct. 338, 67 L.Ed. 616 (1923), which has an extensive discussion of what was meant by a "white person" in a Naturalization Act of 1790 at the time of its re-enactment in 1870 and 1875—almost the same time period during which the original version of § 1981 was enacted.[2] In *Bhagat,* the Court pointed out that, while the phrase "white person" and the word "Caucasian" are often treated as synonymous, "they are not of identical meaning—idem per idem," *id.* at 208, 43 S.Ct. at 339, and "that the words 'free white persons' are words of common speech, to be interpreted in accordance with the understanding of the common man, synonymous with the word 'Caucasian' only as that word is popularly understood." *Id.* at 214–15, 43 S.Ct. at 341.

■ In this Court's view that analysis is correct and we hold therefore that it is a question of fact for a jury or other trier of fact whether the plaintiffs and those they purport to represent are "popularly understood" to constitute a group or groups "readily distinguishable [other than on sex or religious grounds] from the various groups of persons in this country commonly recognized as white." *United States v. Bhagat,* 261 U.S. at 215, 43 S.Ct. at 342, and citizens who enjoy the rights and benefits specified in § 1981 and whether the plaintiffs were purposefully discriminated against by reason thereof.

One hesitates in this field to draw analogies, but to us the problem is one of perception or perhaps one analogous to the "contemporary community standard" rule in obscenity cases and should be treated in such fashion. Section 1981 by its language, conferring as it does its protections on "all persons within the jurisdiction of the United States", permits in our view of none of the suggested limitations as race, national origin, or alienage. By drawing this conclusion, our reading of § 1981 is in accord with the reading given to it by the

---

**2.** Section 1981 is derived from the Civil Rights Act of 1866, which was re-enacted as part of the Enforcement Act of 1870, portions of which were subsequently codified in the Revised Statutes of 1874 in which § 1981 appeared in its present-day form. For a more detailed description of its statutory history, see Comment, Developments in the Law—Section 1981, 15 Harv. C.R.–C.L.L.Rev. 29, 35–36 (1980).

Tenth Circuit in *Manzanares v. Safeway Stores, Inc.*, 593 F.2d at 570–72, a pertinent portion of which is quoted below.[3]

Defendants' motion on this first ground must be and the same hereby is denied.

## II.

Defendants argue further that the actions of Messrs. del Rosario, Diaz and Millet under Title VII of the Civil Rights Act of 1964 are time barred under the provisions of § 2000e–5(e) of such Act, which provides in pertinent part:

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in the case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed ... within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier."

42 U.S.C. § 2000e–5(e) (1984).

■ The parties concede that Messrs. Diaz, del Rosario and Millet have not exhausted the administrative procedures required by Title VII. These plaintiffs, however, are members of a proposed class, three of which, Ramos, Garcia and Mendez, have assertedly exhausted their administrative remedies.

In *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876, 882–83 (8th Cir.), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977), the Court of Appeals said in pertinent part:

"The district court denied Title VII relief to all plaintiffs except Ben Allen and Aaron Rutlin, since only they had filed charges with the EEOC and the complaint did not allege a class action or seek class relief. It is settled that a suit by a named member of a class in a class action may seek relief for the entire class without the necessity of other class members pursuing their administrative remedy with the EEOC. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362 [2370 n. 8, 45 L.Ed.2d 280] (1975); *Romasanta v. United Airlines*,

---

**3.** "Of course, section 1981 makes no mention of race, national origin, or alienage. The only reference is that 'all persons' shall have described rights and benefits of 'white citizens.' Thus the standard against whom the measure was to be made were the rights and benefits of white citizens. The measure is group to group, and plaintiff has alleged that the 'group' to which he belongs—those he describes as of Mexican American descent—is to be measured against the Anglos as the standard.... In this holding we consider that Mexican American, Spanish American, Spanish-surname individuals, and Hispanos are equivalents, and it makes no difference whether these are terms of national origin, alienage, or whatever. It is apparent that a group so described is of such an identifiable nature that the treatment afforded its members may be measured against that afforded the Anglos.

. . . . .

"[S]ection 1981 is directed to racial discrimination primarily, but it is not necessarily limited to the technical or restrictive meaning of 'race.'

. . . . .

"If 'white citizens' means a race, which technically does not seem particularly clear, it would seem that a group which is discriminated against because they are somehow different as compared to 'white citizens' is within the scope of section 1981. We cannot consider this as a 'national origin' case and that alone. Prejudice is as irrational as is the selection of groups against whom it is directed. It is thus a matter of practice or attitude in the community, it is usage or image based on all the mistaken concepts of 'race.'

. . . . .

"It is sufficient for our purposes that as a matter of common knowledge ... a prejudice as alleged in this complaint does exist. It is directed against persons with Spanish surnames. It is a group whose rights can be measured against the standard group or control group referred to in section 1981."
*Manzanares v. Safeway Stores, Inc.*, 593 F.2d at 970–72.

*Inc.*, 537 F.2d 915, 918 (7th Cir.1976); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979, 985 n. 11 (1973); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 718–20 (7th Cir. 1969); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir.1968). In the instant case, although no class action was filed, 13 additional plaintiffs alleged facts demonstrating they were similarly situated and had received the same discriminatory treatment as Ben Allen and Aaron Rutlin. Under such circumstances, particularly where the discrimination is continuing it would be nonsensical to require each of the plaintiffs to individually file administrative charges with the EEOC. Defendants have in no way been placed in jeopardy."

*See also Crawford v. United States Steel Corp.*, 660 F.2d 663, 666 (5th Cir.1981).

On the above-indicated authorities, defendants' motion to dismiss the actions of Diaz, del Rosario and Millet under Title VII must be and the same hereby is denied.

### III.

Plaintiffs concede that defendants Jones, Wilkie and Rodriguez should not be defendants in the claims where they are not named. Further relief, if any, from their so-called "classwide claims" is inappropriate at this juncture and will have to await the preparation of an appropriate pretrial order or the conclusion of plaintiffs' case.

Submit order on notice.

SO ORDERED.