Edgar RODRIGUEZ, Plaintiff,

v.

Alice CHANDLER, in her official capacity as President of State University of New York at New Paltz and in her individual capacity; State University of New York At New Paltz; and Clifton R. Wharton, Jr., in his official capacity as Chancellor of the State University of New York, Defendants.

No. 86 Civ. 9749 (EW).

United States District Court, S.D. New York.

Aug. 11, 1986.

Kenneth Kimerling, New York City, Linda Flores, Jose Luis Morin, Juan Cartagena, New York City, Philip L. Boneta, of counsel, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Howard L. Zwickel, Martha O. Shoemaker, Asst. Attys. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Edgar Rodriguez, formerly an Assistant Professor at the State University of New York at New Paltz (SUNY–New Paltz), commenced this action for damages and injunctive relief against defendants SUNY–New Paltz, his former employer, and Alice Chandler, President of SUNY–New Paltz.[1] Plaintiff, who is a United States citizen and a Puerto Rican, alleges that the defendants paid him a lower salary than that paid to less senior Assistant Professors, denied him tenure, and terminated his employment because of his race, his national origin, and his activities as an advocate for faculty and student minority interests at the college.

Plaintiff seeks damages and injunctive relief under three separate counts: Count One alleges violation of his first and fourteenth amendment rights and of 42 U.S.C. § 1983; Count Two alleges discrimination on the basis of race and national origin under the fourteenth amendment and § 1983, as well as under Title VII of the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act, 42 U.S.C. § 2000e et. seq. (Title VII), and under the Civil Rights Act of 1870, 42 U.S.C. § 1981; and Count Three alleges retaliation in violation of the fourteenth amendment and § 1983, as well as § 1981, against plaintiff for his charges of denial of equal employment and equal educational opportunities for minorities.[2] Defendants move to dismiss plaintiff's claims pursuant to Fed. R.Civ.P. 12(b)(1) as barred by the relevant statutes of limitations and for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants also move for dismissal pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue, or, if dismissal is not granted, for transfer of venue to the Northern District of New York pursuant to 28 U.S.C. § 1404(a).

Plaintiff, who taught in two departments at SUNY-New Paltz—foreign languages and elementary education—alleges that over the ten-year period of his service, commencing in 1974, because of his race, national origin, and advocacy of student and faculty minority interests, he was subjected to a continuing pattern of discriminatory treatment in salary matters, including denial of merit increases, and unequal treatment in the peer review process leading to tenure, resulting in denial of tenure and dismissal.

Plaintiff was considered for tenure in both departments in which he taught in the Spring of 1983 and alleges that at that time, he "met the standards for the granting of tenure."[3] He was denied tenure and reappointment, however, after review by committees in both departments, the chairpersons of both departments, the deans of the faculties in which the departments were situated (the Dean of Liberal Arts and Sciences and the Dean of Edu-

---

**1.** Plaintiff also named as a defendant Clifton Wharton, Jr., in his official capacity as Chancellor of the State University of New York. Wharton is mentioned in the complaint only in paragraph six, which alleges that none of the complaint's substantive charges are directed against him, and that he is meant only to be included in the prayer for relief. Absent any substantive allegations against Wharton, all claims against him must be dismissed. *See Kirkland v. Bianco,* 595 F.Supp. 797, 799–800 (S.D.N.Y.1984); *MacRae v. Motto,* 543 F.Supp. 1007, 1011 (S.D.N.Y. 1982); *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981).

**2.** Insofar as plaintiff originally sought damages under 42 U.S.C. § 1981 and § 1983 from SUNY-New Paltz and from Chandler in her official capacity, he has since withdrawn those claims, conceding that they are barred by the 11th Amendment. *See* Plaintiff's Memorandum of Law at 32–33, 41. Chandler is sued for damages under those provisions in her individual capacity only.

**3.** Complaint at ¶ 20.

cation), the College Central Committee on Tenure and Reappointment, the Vice President of Academic Affairs, and President Chandler. Plaintiff was informed of this decision in a letter dated June 1, 1983, which stated, in part:

> This is to inform you of the decision not to offer you a further appointment after the expiration of your present term appointment on August 31, 1984....
>
> If we receive by February 1, 1984 in the Office of the Vice President for academic affairs formal notification from the degree-granting institution that your doctoral degree has been awarded, this decision not to renew your appointment will be reviewed.... You should be aware, however, that such a degree or its equivalent is not in itself a sufficient condition for a continuing appointment.

Plaintiff did not complete his dissertation by the February 1 deadline, but the college, upon information that his dissertation was approaching completion, extended the deadline to June 1, 1984.

In the spring of 1984, Rodriguez's status was again reviewed by the committees and officials who reviewed his status the previous spring. Despite Rodriguez's progress on his dissertation, the College Central Committee determined that there was a "lack of sufficient evidence to warrant reconsideration." Although Rodriguez alleges that he completed his dissertation by the time of President Chandler's review, she nonetheless reaffirmed the decision set forth in the June 1, 1983 letter, and decided not to grant him tenure. Plaintiff was informed of this decision in a letter dated June 15, 1984.

## I. STATUTES OF LIMITATIONS

Defendants assert that plaintiff has failed to file his Title VII, § 1983 or § 1981

claims within the relevant limitations periods. Deciding these issues requires identification of the limitations period that applies to each claim, the date of the discriminatory acts upon which each claim is based, and the date upon which the claims were filed. Plaintiff's tenure claim and his claim of salary discrimination involve different discriminatory acts, and thus require separate consideration.

### A. THE TENURE CLAIM

■ *1. The Title VII claim.*—To assure that a Title VII claim is not time-barred, a plaintiff in New York must file a charge with the Equal Employment Opportunity Commission (EEOC) within 300 days after he receives notice of the alleged unlawful employment practice. This period of limitation, mandated by 42 U.S.C. § 2000e-5(e), applies because New York is a "deferral state"—a state with its own antidiscrimination agency.[4] Plaintiff's charge was filed with the EEOC on January 16, 1985,[5] more than 300 days after he received the June 1, 1983 letter notifying him of the decision to deny him tenure and terminate his employment on August 31, 1984.

Defendants thus contend that the Title VII limitations period began when plaintiff received the June 1, 1983 letter. Plaintiff maintains, however, that the discriminatory act that is the basis for his claim is the defendants' decision in the spring of 1984 to reaffirm their earlier denial of tenure and termination of his employment, this time without any offer of reconsideration. Plaintiff thus claims that the Title VII limitations period did not begin until he received the June 15, 1984 letter which "reaffirm[ed] the decision ... not to offer you a further appointment ... after the expira-

---

**4.** *See* 42 U.S.C. § 2000e-5(e); *Mohasco Corp. v. Silver,* 447 U.S. 807, 815-17, 100 S.Ct. 2486, 2491-92, 65 L.Ed.2d 532 (1980); *see also Reinhard v. Fairfield Maxwell Ltd.,* 707 F.2d 697 (2d Cir.1983).

**5.** As *Mohasco* and *Reinhard* explain, a claim is not deemed officially filed with the EEOC until the EEOC has held it for 60 days, giving state agencies an opportunity to take action on the

charge. Because the EEOC received plaintiff's charge on November 16, 1984, it was filed with the EEOC on January 16, 1985. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 15; Defendant's Memorandum of Law in Support of their Motion to Dismiss or in the Alternative for a Change of Venue to the Northern District, at 11.

tion of your present appointment on August 31, 1984."

The question presented by these competing arguments is when the final decision to deny tenure was made and Rodriguez notified. That date is the date of the alleged unlawful employment practice under 42 U.S.C. § 2000e–5(e).[6] The June 1, 1983 letter explicitly notified plaintiff of the college's decision "not to offer you a further appointment on the faculty after the expiration of your present term appointment on August 31, 1984." Plaintiff disputes that this statement indicates final action, because the letter also stated that if the college received formal notification that Rodriguez had been awarded his doctoral degree, the "decision not to renew your appointment will be reviewed." Plaintiff's attempt to deny the finality of the foregoing termination decision, based upon the promise of review, is without substance. The termination decision by its terms is clear and unequivocal. On January 31, 1984, when the college extended the time limit for Rodriguez to obtain his doctorate, the finality of the June 1, 1983 termination decision was emphasized as follows:

> Your appointment letter for the 1983–84 academic year, dated June 1, 1983, informed you of the College's decision not to offer you a further appointment on the faculty after the expiration of your present term appointment on August 31, 1984. Unless you are officially informed to the contrary, this notice of nonrenewal of appointment remains in effect. My letter to you of June 1, 1983, also stated that if the Office of the Vice President for Academic Affairs received by February 1, 1984, formal notification from the degree-granting institution that your doctoral degree has been awarded,

this decision not to renew your appointment would be reviewed.

> Let me remind you of the following statement which I made in your June 1, 1983, appointment letter: "In view of your academic responsibilities, an appropriate terminal degree or its equivalent is a necessary condition for a continuing appointment. You should be aware, however, that such a degree or its equivalent is not in itself a sufficient condition for a continuing appointment."

That the denial would be reconsidered in the event plaintiff received his doctoral degree, or even that such reconsideration could have led to tenure, did not alter the fact that the alleged "unlawful employment practice" was the June 1, 1983 decision not to offer plaintiff a further appointment. The basic facts of this case cannot be distinguished from those in *Chardon v. Fernandez,*[7] or *Delaware State College v. Ricks.*[8] Accordingly, the 300–day limitations period began to run when Rodriguez received the June 1, 1983 letter and ended during the last week of March, 1984. Since plaintiff's Title VII claim regarding tenure discrimination was filed after that period, to wit on January 16, 1985, it is time-barred.

■ *2. The § 1983 claims.*—Under 42 U.S.C. § 1988, the limitations period for § 1983 claims is governed "according to state law." Applying what it found to be the most appropriate state law limitations period, the Second Circuit has long held that in New York, § 1983 claims are subject to the three-year limitations period applied to actions based on liability created by statute, N.Y.Civ.Prac.Law § 214(2).[9] In

---

**6.** *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam); *Delaware State College v. Ricks,* 449 U.S. 250, 258–59, 262, 101 S.Ct. 498, 504, 506, 66 L.Ed.2d 431 (1980).

**7.** 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981).

**8.** 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

**9.** *Conway v. Village of Mount Kisco,* 750 F.2d 205, 212 (2d Cir.1984); *Keating v. Carey,* 706 F.2d 377, 381–82 (2d Cir.1983); *Pauk v. Board of Trustees of the City University of New York,* 654 F.2d 856, 861–66 (2d Cir.1981), *cert. denied,* 455 U.S. 100, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Singleton v. City of New York,* 632 F.2d 185, 189–90 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

*Wilson v. Garcia,*[10] however, the Supreme Court held that under New Mexico law, the proper statute of limitations for § 1983 claims is the statute of limitations for personal injuries. Defendants contend that *Wilson* requires the application of a tort statute of limitations to § 1983 claims in New York, and given that New York distinguishes between intentional and unintentional torts, they urge this court to apply the one-year limitations period for intentional torts, set out in N.Y.Civ.Prac.Law § 215(3), because § 1983 claims are more closely analogous to intentional than to unintentional torts.[11]

This Court, however, will apply a three-year statute of limitations, for several reasons. First, since *Wilson* was decided, the New York district courts have in the great majority of § 1983 cases applied the three-year general statute of limitations for personal injuries, N.Y.Civ.Prac.Law § 214(5).[12] Second, although the Second Circuit has not yet reconsidered the issue since *Wilson,*[13] its only dictum on the subject states that if it were to reconsider its analysis in light of *Wilson,* it would apply the *"general* personal injury tort limitations period" of three years, which the district courts have been applying.[14] Third, this Court is bound by the Second Circuit's consistent

refusal to abandon its prior holdings and apply a shorter limitations period to § 1983 claims, the underlying rationale being to effectuate the broad remedial purposes of § 1983.[15] Since plaintiff brought his § 1983 claim within three years of his receipt of the June 1, 1983 letter, this court finds his § 1983 tenure discrimination claim is not time-barred.

■ ■  *C. The § 1981 claims.*—As in the case of § 1983, the Second Circuit has in the past applied to § 1981 claims New York's three-year limitations period for actions based upon a statute, N.Y.Civ. Prac.Law § 214(2).[16] Although defendants argue that *Wilson* contradicts this application, *Wilson* dealt only with § 1983, and thus does not overrule the Second Circuit's holding concerning § 1981. In any case, defendants are in error in arguing that the limitations period for the state cause of action most analogous to § 1981 is the one-year limitations period applied to charges filed with the New York Division of Human Rights. The Supreme Court has held that the generally short limitations periods applied to actions brought before administrative agencies are not applicable to § 1981 claims, which require more extensive prep-

---

**10.** 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

**11.** Three circuit courts, facing a similar choice in the aftermath of *Wilson,* have applied a state limitations period for intentional torts to § 1983 claims. *See Mulligan v. Hazard,* 777 F.2d 340, 343–44 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); *Gates v. Spinks,* 771 F.2d 916, 919–20 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986); *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 Sup.Ct. 893, 88 L.Ed.2d 926 (1986).

The First Circuit, however, has chosen to apply Maine's general statute of limitations for personal injury actions instead of that state's shorter statute of limitations for selected intentional torts. *See Small v. The Inhabitants of the City of Belfast,* 796 F.2d 544 (1986).

**12.** *See Saunders v. State of New York,* 629 F.Supp. 1067 (N.D.N.Y.1986); *Okure v. Owens,* 625 F.Supp. 1568 (N.D.N.Y.1986); *Testa v. Gallagher,* 621 F.Supp. 476, 479 (S.D.N.Y.1985); *Ladson v. New York City Police Dep't,* 614

F.Supp. 878, 879 (S.D.N.Y.1985); *Snell v. Suffolk County,* 611 F.Supp. 521, 524 (E.D.N.Y. 1985), *aff'd,* 782 F.2d 1094 (2d Cir.1986); *Williams v. Allen,* 616 F.Supp. 653, 655 (E.D.N.Y. 1985); *Rodrigues v. Village of Larchmont,* 608 F.Supp. 467, 476–77 (S.D.N.Y.1985). *But see Nell v. Waring,* CV–79–0177, slip op. (E.D.N.Y. June 11, 1986); *Comfort v. Gorenflo,* Civ. 84, 391T, slip op. (W.D.N.Y.1986) [Available on WESTLAW, DCTU database].

**13.** The issue will be presented on appeal in *Okure v. Owens,* 625 F.Supp. 1568 (N.D.N.Y. 1986) (leave to appeal granted May 6, 1986).

**14.** *Villante v. Dep't of Corrections of the City of New York,* 786 F.2d 516, 520 n. 2 (2d Cir.1986).

**15.** *See Pauk v. Board of Trustees of the City University of New York,* 654 F.2d 856, 862 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 86 (1982).

**16.** *See Keyse v. California Texas Oil Corp.,* 590 F.2d 45 (2d Cir.1978) (per curiam).

aration.[17]  Applying the three-year limitations period is more consistent with the remedial purpose of the statute. Accordingly, plaintiff's § 1981 claim concerning tenure is not time-barred.

## B. THE SALARY DISCRIMINATION CLAIMS

■ The limitations periods described above for claims under Title VII, and sections 1983 and 1981 also apply to plaintiff's salary discrimination claim. This claim differs from plaintiff's tenure claim, however, because plaintiff does not allege any dates on which his salary was set in a discriminatory manner. The question to be answered is whether any act of salary discrimination occurred at a time so as not to be time-barred under the relevant statutes of limitations.

Under the allegations of the complaint, defendants' last act of salary discrimination occurred when plaintiff received his last salary check for his term of employment ending in August, 1984.[18] The salary he then received was allegedly lower than that paid to other members of the faculty who were in his category. Plaintiff filed his Title VII charge with the EEOC on January 16, 1985, thus instituting a timely Title VII claim with respect to all paychecks received in the previous 300 days, a period extending back to March, 1984. Similarly, under sections 1983 and 1981, plaintiff's claim was timely with regard to all paychecks received within the three years prior to December 13, 1985, the day he filed his complaint.

Plaintiff's salary claim is thus not time-barred under any of the relevant statutes of limitations. Whether plaintiff may recover for allegedly reduced payments received prior to the limitations periods, by proving that such payments together form a pattern constituting a single "continuing injury," is a issue of fact that pertains to damages. As such, it need not be considered on defendants' motion to dismiss.

## II. JURISDICTION OVER PLAINTIFF'S CLAIMS AGAINST CHANDLER

Defendants move that the claims against Chandler under § 1981 and § 1983 be dismissed because she is not liable under the doctrine of *respondeat superior* for the actions of her subordinates. Plaintiff's complaint, however, specifically charges that the "decision to deny tenure by defendant Chandler [was] not made in good faith but [was] the result of Professor Rodriguez' advocacy of minority interests and of Professor Rodriguez' race and national origin." [19] Because the claims against Chandler under sections 1981 and 1983 are based on her individual acts and conduct, plaintiff alleges a viable claim against Chandler.

Defendants also argue that as regards plaintiff's § 1983 claim, Chandler is entitled to the good faith immunity that protects government officials performing discretionary acts from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[20] This argument, however, goes to the merits of plaintiff's claim and is not properly the subject of a Rule 12(b)(1) or Rule 12(b)(6) motion to dismiss, which goes only to the face of the complaint. Whether Chandler is in fact shielded by good faith immunity is an issue to be determined at trial if plaintiff argues for relief under that theory.

---

**17.** *Burnett v. Grattan,* 468 U.S. 42, 49–55, 104 S.Ct. 2924, 2930, 82 L.Ed.2d 36 (1984).

**18.** It is not necessary for plaintiff to allege the date of the college's original decision to pay him a discriminatory salary; the act of paying plaintiff a discriminatorily low salary check is an actionable wrong in itself. *See Bazemore v.*

*Friday,* —— U.S. ——, ——, 106 S.Ct. 3000, 3005, 92 L.Ed.2d 315 (1986).

**19.** Complaint at ¶ 30.

**20.** *See Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982).

### III. FAILURE TO STATE A CLAIM UNDER TITLE VII, § 1983, AND § 1981

Defendants move for dismissal under Fed.R.Civ.P. 12(b)(6) on the grounds that plaintiff has failed to state a claim upon which relief can be granted under Title VII, § 1983, or § 1981. In deciding this motion, the allegations of plaintiff's complaint are deemed to be true and the Court may not dismiss a claim "unless it appears beyond doubt that [the] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [21] At the same time, however, this liberal pleading rule does not relieve plaintiff of his burden of alleging specific facts in order to state a claim under the civil rights laws.[22]

Defendants contend that plaintiff has failed to state a claim under Count One that they allegedly violated his first amendment rights to freedom of speech and association by refusing to grant him tenure in retaliation for his advocacy of minority interests. Defendants cite *Connick v. Myers* [23] for the proposition that when an employee's speech relates only to a matter of personal interest, the first amendment is not implicated, even if adverse employment decisions are alleged to have resulted from that speech. They argue that plaintiff's advocacy in support of minority interests was essentially an effort to promote his personal interests and is thus not entitled to first amendment protection.

This contention, based upon *Connick*, disregards the allegations of plaintiff's complaint. Plaintiff alleges that his speeches and actions were to advance the interests of minority groups, including faculty members and students. Thus his ad-vocacy, while no doubt advancing his own interests, went much beyond and also advanced the interests of others who were similarly situated. Whether the plaintiff's speech reflects matters of public rather than private concern must be determined by the "content, form, and context of a given statement, as revealed by the whole record." [24] The record established at trial may well indicate that plaintiff's speech was on issues of public concern. Second, because minority employment and minority rights issues are no doubt matters of public concern, public expression by those directly affected by such matters is to be expected. To hold that *Connick* permits the state to discharge a minority employee because of his public statements urging recognition of the interests of minority students and faculty members would unduly burden the exercise of the right of free speech.

Defendants also challenge plaintiff's Count II and III claims under § 1983 and the fourteenth amendment. They contend, first, that plaintiff fails to state a claim under the equal protection clause of the fourteenth amendment because he fails to allege discriminatory intent. Defendants' argument is in error, however, since plaintiff's complaint clearly alleges that Chandler's decision and the recommendations of other SUNY-New Paltz officials were "not made in good faith but were the result of Professor Rodriguez's advocacy of minority interests and of Professor Rodriguez's race and national origin." [25]

Defendants are partially successful in arguing that plaintiff fails to state a claim that his fourteenth amendment right to procedural due process had been violated.[26] In order to state such a claim, Rodri-

---

**21.** *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Escalera v. New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

**22.** *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372–73 (2d Cir.1978) (per curiam); *Avins v. Magnum,* 450 F.2d 932 (2d Cir.1971); *Birnbaum v. Trussel,* 347 F.2d 86 (2d Cir.1965); *Morpurgo v. Board of Higher Educ. in*

*City of New York,* 423 F.Supp. 704, 711, 713 (S.D.N.Y.1976).

**23.** 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

**24.** *Id.* at 147–48, 103 S.Ct. at 1690.

**25.** Complaint at ¶ 30.

**26.** In passing, defendants note that the pleadings do not "establish" that any substantive due

guez would have had to allege facts indicating that he had a constitutionally protected liberty or property interest.[27] No liberty interest is implicated by Rodriguez's salary discrimination claim, and insofar as tenure and employment disputes are concerned, the only liberty interests recognized as protected are the interests in maintaining one's "standing in the community" and in "the freedom to take advantage of other employment opportunities." [28] For a court to find such an injury, a plaintiff must allege that the state has publicized the reasons for terminating his employment.[29] Because plaintiff does not allege that the college publicized its decision, he fails to allege a deprivation of liberty.

■ Rodriguez must therefore claim a protected property interest in order to maintain a procedural due process claim. To claim such an interest, a plaintiff must invoke "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlements to those benefits." [30] As regards his salary discrimination claim, plaintiff alleges a protected property interest. In essence, he alleges that he obtained a large grant for the college and received no merit increase, even though it was the policy of the college to reward professors who obtain grants with merit increases.[31] Such a policy would constitute an understanding that plaintiff could rely upon to substantiate his claim of entitlement to merit increases.

■ As regards his tenure claim, however, plaintiff fails to allege any similar policy or understanding. The only statement in his complaint that comes close to such an allegation is the statement that in Spring of 1983 he "met the standards for the granting of tenure." [32] This allegation, however, is conclusory because it fails to identify any of the standards for the granting of tenure and how plaintiff met those standards. Given this circuit's requirement that plaintiffs bringing actions under the civil rights laws—here, § 1983—must allege specific facts in their complaint,[33] plaintiff's broadbrush assertion does not suffice as an allegation of a protected property interest. Plaintiff's procedural due process claim concerning his denial of tenure is thus dismissed.

Also under Counts Two and Three, defendants present two challenges to the sufficiency of plaintiff's § 1981 claim. First, noting that § 1981 protects the right of persons to "make and enforce" contracts on the same basis as white citizens, defendants argue that the plaintiff had no contractual right that was infringed by defendants' actions. At least with respect to his salary claim, plaintiff has alleged there was an implicit agreement that professors who obtain grants for the college receive merit increases, and that he did not receive merit increases pursuant to that contract because he was nonwhite. Such interference with plaintiff's ability to "enforce" a contract would be prohibited by § 1981.

---

process right of the plaintiff was violated. Whether such a claim is established is a question that goes to the merits and is not at issue on a motion to dismiss. Defendants made no argument that plaintiff failed to state a claim that his substantive due process rights had been violated.

**27.** *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

**28.** *Id.* at 573, 92 S.Ct. at 2707; *Longarzo v. Anker,* 578 F.2d 469 (2d Cir.1978); *Jones v. Kneller,* 482 F.Supp. 204, 209–10 (E.D.N.Y.1979), *aff'd without opinion sub. nom, Jones v. Board of Educ.,* 633 F.2d 204 (2d Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980).

**29.** *Board of Curators v. Horowitz,* 435 U.S. 78, 83, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978); *Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Longarzo v. Anker,* 578 F.2d 469, 472 (2d Cir.1978); *Jones v. Kneller,* 482 F.Supp. 204, 210 (E.D.N.Y.1979).

**30.** *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Longarzo v. Anker,* 578 F.2d 469, 471 (2d Cir.1978).

**31.** Complaint at ¶ 15.

**32.** Complaint at ¶ 30.

**33.** *See supra* note 22.

A different question is presented by defendants' motion to dismiss plaintiff's § 1981 claim regarding his denial of tenure. In order to state a claim, plaintiff again would have to allege interference with his ability to "make or enforce" a contract on the same terms as similarly situated whites. Plaintiff, however, does neither. As noted earlier, plaintiff's most specific allegation with regard to his tenure claim is that he was denied tenure despite his meeting relevant "standards" in the spring of 1983. This allegation, however, devoid of any detail concerning these standards or how plaintiff satisfied them, is too vague to constitute either an allegation that he had a contract entitling him to tenure which he was unable to "enforce," or that he was unfairly discriminated against in his efforts to "make" a contract for permanent employment. This inadequacy is compounded by plaintiff's failure to support his charge of race discrimination with a specific allegation that whites with qualifications similar to his were granted tenure. Because plaintiff has not alleged specific facts as required in order to state a claim under the civil rights laws,[34] plaintiff's claim of tenure discrimination under § 1981 is dismissed.

Defendants' second challenge to plaintiff's § 1981 claim is that the statute does not protect against claims of national origin discrimination. Neither the Supreme Court[35] nor the Second Circuit has decided this issue.[36] As a result, while most district courts in this circuit have found that § 1981 does not protect against national origin discrimination, there is nonethless disagreement.[37]

Section 1981 does not narrowly circumscribe the group it entitles to bring claims. Rather, it guarantees to all citizens certain "rights enjoyed by white persons," and thereby implicitly defines a protected category of persons perceived as "nonwhite"—indeed a broad universe. As several courts have held, persons of hispanic descent may be perceived as "nonwhite," because of their heritage or appearance.[38] Recognizing that this prejudice is in some instances indistinguishable from racism, some courts have allowed hispanics to sue under § 1981 if they allege discrimination on the basis of "race."[39] However, whether one labels the prejudice against Hispanics "national origin" discrimination or "racism" in fact makes little difference with respect to § 1981 analysis, because the operative category under that statute is "nonwhite"—a category that does not correspond exactly to race, citizenship, or national origin. Rodriguez has made an effort, perhaps somewhat inept, to capture this notion by using the terms "race" and "national origin." Looking past Rodriguez's choice of

**34.** *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372–73 (2d Cir. 1978) (per curiam); *Avins v. Magnum,* 450 F.2d 932 (2d Cir. 1971); *Birnbaum v. Trussel,* 347 F.2d 86 (2d Cir. 1965); *Morpurgo v. Board of Higher Educ. in City of New York,* 423 F. Supp. 704, 711, 713 (S.D.N.Y. 1976).

**35.** The Supreme Court has stated that 42 U.S.C. § 1982, which uses similar language to § 1981, does not apply to claims of national origin discrimination. *Jones v. Alfred Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968). This statement, however, was dictum. Moreover, this statement cannot be said to settle the issue as regards § 1981, because the Court has, since *Jones,* explicitly reserved decision on whether § 1981 encompasses claims of national origin discrimination. *Delaware State College v. Ricks,* 449 U.S. 250, 256 n. 6, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980).

**36.** *See Guardians Ass'n of the New York City Police Dep't, Inc.,* 633 F.2d 232, 268 n. 67 (2d Cir.1980).

**37.** *Compare, e.g., Avigliano v. Sumitomo Shoji America, Inc.,* 473 F.Supp. 506, 514 (S.D.N.Y. 1979), *aff'd,* 638 F.2d 552 (2d Cir.1981), *vacated on other grounds,* 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982), *with, Ramos v. Flagship Int'l, Inc.,* 612 F.Supp. 148 (E.D.N.Y.1985).

**38.** *See, e.g., Martinez v. Winner,* 771 F.2d 424, 440 (10th Cir.1985), *modified in part,* 788 F.2d 553, *vacated sub. nom Tyus v. Martinez,* —— U.S. ——, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986); *Ramos v. Flagship Int'l, Inc,* 612 F.Supp. 148 (E.D.N.Y.1985).

**39.** *See Enriquez v. Honeywell, Inc.,* 431 F.Supp. 901 (W.D.Okl.1977); *Martinez v. Hazelton Research Animals, Inc.,* 430 F.Supp. 186 (D.Md. 1977); *Cubas v. Rapid American Corp. Inc.,* 420 F.Supp. 663 (E.D.Pa 1976).

terminology and to the facts alleged in his complaint, it seems evident that a Spanish-surnamed person of Puerto Rican origin who champions minority rights may well be perceived as "nonwhite." Rodriguez's § 1981 claims may thus not be dismissed on the pleadings.

Defendants also argue that plaintiff failed to state a claim under Title VII with regard to tenure discrimination. However, since plaintiff's Title VII tenure claim is time-barred, that issue need not be reached. Because defendants did not address the sufficiency of plaintiff's Title VII claim with regard to salary, that claim goes unchallenged.

## IV. VENUE

■■ ■■ Under 42 U.S.C. § 2000e–5(f), an action under Title VII may be brought "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed."[40] Because the plaintiff alleges discriminatory acts that took place in the state of New York, venue exists in the southern district over plaintiff's Title VII claims. On the other hand, plaintiff's claims under § 1983 and § 1981 would ordinarily have to be brought in the northern district—"where all the defendants reside or in which the claim arose," pursuant to 28 U.S.C. § 1391(b). Yet given the propriety of venue over the Title VII claims, this Court may also exercise venue over plaintiff's factually related claims under § 1981 and § 1983.[41] Whether to apply such "pendent venue" is a discretionary decision, based on considerations of judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation, and fairness to the litigants.[42] Pendent venue has

often been used in cases in which venue over one claim is already established under a specialized venue statute.[43] To separate plaintiff's § 1983 and § 1981 claims from his factually related Title VII claims would result in inefficiency, waste of judicial resources, and a possibility of inconsistent judgments, and would deter Title VII plaintiffs with related claims from freely exercising the special statewide choice of venue granted them by Congress. Defendants' motion to dismiss for improper venue is thus denied.

■■ Defendants have argued in the alternative for a transfer of venue, pursuant to § 1404(a), to Albany, within the Northern District of New York, because most of the witnesses are located at the college at New Paltz. Plaintiff has pointed out, however, and defendants have not denied, that New Paltz is virtually the same distance from Albany (77 miles) as from New York City (79 miles). Since defendants have shown no unfairness or substantial inconvenience that would result from leaving venue in the Southern District of New York, their motion for transfer is denied.

## V. CONCLUSION

Defendants' motion to dismiss plaintiff's claims as time-barred is granted only with respect to plaintiff's tenure claim under Title VII, and defendants' motion to dismiss for failure to state a claim is granted only with respect to plaintiff's procedural due process and § 1981 claims concerning his denial of tenure. Defendants' motions to dismiss plaintiff's § 1983 claims against Chandler for lack of jurisdiction, to dismiss all claims for improper venue, and for a transfer of venue are denied. All claims against Wharton are dismissed.

So ordered.

**40.** *See Aitkin v. Harcourt Brace Jovanovich,* 543 F.Supp. 987 (W.D.N.Y.1982); *Dubnick v. Firestone Tire & Rubber Co.,* 355 F.Supp. 138, 140 (E.D.N.Y.1973); *Gilbert v. General Electric Co.,* 347 F.Supp. 1058 (E.D.Va.1972).

**41.** *Cf. Beattie v. United States,* 756 F.2d 91, 100–104 (D.C.Cir.1985); *Garfinkle v. Arcata National Corp.,* 360 F.Supp. 1296 (S.D.N.Y.1973); *Laffey v. Northwest Airlines,* 321 F.Supp. 1041 (D.C.D.C.1971).

**42.** *Beattie v. United States,* 756 F.2d 91, 103 (D.C.Cir.1984).

**43.** *See Garfinkle v. Arcata Nat'l Corp.,* 360 F.Supp. 1296 (S.D.N.Y.1973); *Carolyn Chenilles, Inc. v. Ostow & Jacobs, Inc.,* 168 F.Supp. 894 (S.D.N.Y.1958); *Dolly Toy Co. v. Bancroft-Rellim Corp.,* 97 F.Supp. 531 (S.D.N.Y.1951); *Ferguson v. Ford Motor Co.,* 77 F.Supp. 425, 436 (S.D.N.Y. 1948).