Donald BROWN, Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al., Defendants.

No. CV 86–1336.

United States District Court, E.D. New York.

March 23, 1987.

---

**2.** The Supreme Court left this question open for reargument in the *Delaware Valley* case. 106 S.Ct. at 3100.

Leeds & Morelli by Steven A. Morelli, Carle Place, N.Y., for plaintiff.

The Port Authority of New York and New Jersey by Richard D. Williams, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In April, 1986, plaintiff Donald Brown commenced this litigation against defendants Port Authority of New York and New Jersey ("Port Authority"), Port Authority Police, V. Strom, Henry DeGeneste, James Nachstein, and William Flemming by way of an order to show cause why preliminary injunctive relief should not be granted and a complaint seeking injunctive and declaratory relief as well as compensatory and punitive damages. After a hearing on the order to show cause, the Court denied plaintiff's request for preliminary injunctive relief. Subsequently, in a Memorandum and Order dated July 18, 1986, the Court dismissed Brown's complaint, but granted him leave to file an amended complaint, *Brown v. Port Authority of New York and New Jersey*, No. CV 86–1336, slip op. (E.D.N.Y. July 18, 1986), which Brown did in a timely manner. Defendants now move for an order dismissing the amended complaint. Plaintiff, in turn, cross-moves for an order granting him summary judgment. For the reasons discussed below, both motions are denied.

## I. DEFENDANTS' MOTION TO DISMISS

In considering the merits of defendants' motion to dismiss, the Court must take as admitted the material allegations of plaintiff's amended complaint, along with such reasonable inferences as might be drawn in plaintiff's favor, *Gargiul v. Tompkins,* 704 F.2d 661 (2d Cir.1983), *vacated on other grounds,* 465 U.S. 116, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Murray v. City of Milford,* 380 F.2d 468 (2d Cir.1967), and can properly grant the motion only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the amended complaint's allegations, *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Thus, for the purposes of deciding defendants' motion, the Court must accept the allegations Brown sets forth in his amended complaint as true.

According to plaintiff's amended complaint, Brown is a lieutenant in the Port Authority Police who is presently assigned to John F. Kennedy International Airport ("JFK" or "the airport") as a "Tour Commander." Plaintiff's duties include "front-line responsibility" for responding to and neutralizing terrorist incidents that might arise at the airport. The Port Authority is a creation of the legislatures of New York and New Jersey whose jurisdiction includes JFK. The Port Authority Police is a law enforcement arm of the Port Authority. Strom, DeGeneste, Nachstein, and Flemming are each officials in the Port Authority Police administration: Strom holds the title of "Public Safety Director", DeGeneste of "Superintendent", Nachstein of "Chief Inspector" (the highest ranking uniformed officer), and Flemming of "Police Inspector."

Paragraph 2 of the amended complaint sets forth in a nutshell the nature of plaintiff's action:

This action arises from the refusal of the defendants (who are responsible for protecting *the public* and their employees at New York Metropolitan Airports) to train, staff, equip, and coordinate their Police command for anti-terrorist activity, and the deliberate attempt by the defendants to conceal their inadequate anti-terrorist preparation from corrective scrutiny by taking disciplinary action against a Superior Officer, the plaintiff herein, who communicated his concerns about the defendants' actions in a written memorandum addressed to his superiors and the labor organizations which represent the Port Authority Police.

More specifically, the amended complaint alleges that, after numerous unsuccessful attempts to communicate with superiors within the Port Authority Police regarding purported deficiencies in manpower, training, equipment, and police coordination necessary to combat actual or potential terrorist activity at JFK, plaintiff prepared and circulated a memorandum, addressed to Nachstein with copies to, among others, Strom, DeGeneste, the Police Benevolent Association, New York Governor Mario Cuomo, New Jersey Governor Thomas Kean, and New York City Mayor Edward Koch, that questioned the preparedness of the Port Authority Police for dealing with terrorism and criticized Nachstein for his purported failure to act. The memorandum also threatened legal action against various individuals if any harm should come to Brown as a result of Nachstein's "absolutely negligent and dangerous attitude."

Plaintiff alleges that, after the circulation of this memorandum, he was subjected to a disciplinary interview that resulted in a counseling memorandum being placed in his file and, for the first time during his employment with the Port Authority Police, he received a counseling memorandum for his sick leave. Brown claims that this disciplinary action was designed to discourage him from exercising his First Amendment right to speak freely on subjects of public concern. Additionally, Brown asserts that defendants' actions or, more accurately, lack of actions, with regard to the possible threat of terrorism at JFK have intentionally and willfully subjected him to severe psychological stress, mental strain, anxiety, and fatigue. As relief for these alleged wrongs, Brown requests that the Court enter an order declaring defendants' ac-

tions to be violative of the First Amendment, plaintiff's employment agreement, and the Port Authority's legislative mandate, enjoining defendants from taking retaliatory action against plaintiff for his exercise of his constitutional right of free speech and directing them to act in a manner consistent with the employment agreement and legislative mandate, assessing compensatory and punitive damages totalling six million dollars, and awarding to plaintiff reasonable attorneys fees and other costs and disbursements arising from this action.

As the basis for their motion, defendants argue that plaintiff's First Amendment claim, which is the sole source of the Court's subject matter jurisdiction over this litigation, is insufficient to state a cause of action under the Supreme Court's decisions construing the scope of the First Amendment rights of public employees, namely, *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Connick v. Meyers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

*Pickering* was a lawsuit brought by a public school teacher who had been dismissed from his position for sending a letter to a local newspaper that was critical of the way the Board of Education and the school district superintendent had handled proposals to raise revenue for the schools. The Supreme Court saw the issue presented by the case as that of "arriv[ing] at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employee, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35. Because of "the enormous variety of fact situations" implicating the First Amendment rights of public employees, however, the Court deemed it both inappropriate and infeasible to attempt to lay down a general standard governing the scope of statements such employees may make without fear of reprisal. 391 U.S. at 569, 88 S.Ct. at 1735. Nonetheless, the Court did "indicate some of the general lines along which an analysis of the controlling interests

should run" by taking into account as relevant such factors as the need for the maintenance of either discipline by supervisors or harmony among co-workers, the closeness of the working relationships involved and whether personal loyalty and confidence are necessary for their proper functioning, and whether the statements impeded the employee's performance of his duties or interfered with the regular operation of the employing agency, 391 U.S. at 569–70, 572–73, 88 S.Ct. at 1735, 1737, and held that the facts of the case then before it demonstrated that Pickering's right to freedom of speech had indeed been violated.

*Connick* arose from the dismissal of an assistant district attorney who, after being informed that she was to be transferred to prosecute cases in a different section of the criminal court, prepared and distributed to the other assistant district attorneys a questionnaire regarding office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work on political campaigns. The Supreme Court, in a 5–4 decision, held that the dismissal did not violate the employee's constitutional rights. Justice White noted in his majority opinion that *Pickering* had quite purposefully emphasized that the constitutional right to be protected is essentially that of a public employee, as a citizen, to comment upon matters of public concern. Issues involving merely internal office affairs or questions of only personal interest, on the other hand, do not implicate the First Amendment to the same degree. *Connick*, 461 U.S. at 143, 146–47, 103 S.Ct. at 1688, 1690. Justice White then stated:

> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. In this case, with one exception, the questions posed by Myers to her co-workers do not fall under the subject of matters of "public concern." We view the questions pertaining to the confidence and trust that Myers' co-workers possess in various supervisors,

the level of office morale, and the need for a grievance committee as mere extensions of Myers' dispute over her transfer to another section of the criminal court. 461 U.S. at 147–48, 103 S.Ct. at 1690. Although the court found it "apparent" that the "one exception," the question pertaining to pressure to work on political campaigns, was "a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal," 461 U.S. at 149, 103 S.Ct. at 1691, the Court concluded that, all in all, "Myers' questionnaire touched upon matters of public concern in only a most limited sense" and that the First Amendment did not require the District Attorney to tolerate actions by a dissatisfied employee that he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships. 461 U.S. at 154, 103 S.Ct. 1693–94.

■ Defendants argue that, like the questionnaire the assistant district attorney circulated in *Connick*, the memorandum Brown distributed relates essentially to matters of personal interest, not of public concern. Defendants' interpretation of the intent and import of Brown's memorandum, however, appears strained. The one and one-half page, single-spaced memorandum discusses at some length occurrences of terrorism throughout the world, the possibility of terrorist attacks in New York airports, and the Port Authority Police's perceived inability to prevent or handle a terrorist incident. While the memorandum also addresses Brown's personal concerns as a Tour Commander with the Port Authority Police and threatens legal action should he be injured in the line of duty, it would seem beyond serious dispute that the safety of people using or employed at New York's international airport and the methods currently being utilized to protect them from an anything but farfetched possibility is an issue of utmost concern to many members of the community at large. In any event, the subject of Brown's memorandum is not so removed from matters of public concern that the Court could properly grant a motion to dismiss on the ground

that, as a matter of law, the memorandum addresses issues of solely private interest. *See Rodriguez v. Chandler*, 641 F.Supp. 1292 (S.D.N.Y.1986) (motion to dismiss on ground that plaintiff's speech reflected matters of merely personal concern denied).

■ Defendants also appear to argue that plaintiff's complaint must be dismissed on the grounds that Brown's memorandum constituted a personal attack on Nachstein that caused dissension and disharmony within the ranks of the Port Authority Police, undermined Port Authority Police discipline, and interfered with the operation of the Port Authority Police. These are insufficient bases to warrant the granting of defendants' motion, however, since for the Court to accept the ultimate validity of such assertions at this stage of the litigation would require it to violate the principles applicable to consideration of motions to dismiss. *Cf. Rodriguez*, 641 F.Supp. 1292; *Petrozza v. Incorporated Village of Freeport*, 602 F.Supp. 137 (E.D.N.Y.1984) (denying summary judgment motion rooted in contention that plaintiff's conduct not constitutionally protected because disruptive to office's efficiency and harmony).

Accordingly, defendants' motion to dismiss is denied.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In response to defendants' motion to dismiss, plaintiff has not only filed papers in opposition to defendants' motion, but has also filed his own motion for an order granting him summary judgment. A court may grant summary judgment only if "there is no genuine issue as to any material fact and.... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56; *Celotex Corp. v. Catrett*, —— U.S. ——, ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 278–79 (2d Cir.1967), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). Furthermore, on a mo-

tion for summary judgment, "inferences to be drawn from the underlying facts....must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

■ The parties to this lawsuit are currently contesting a number of issues of material fact. There are, for instance, the issues concerning the effect of plaintiff's memorandum upon the harmony, discipline, and operation of the Port Authority Police that the Court has noted in the context of ruling upon defendants' motion to dismiss. The parties are also in disagreement, as defendants point out in their papers, as to whether defendants' actions in response to plaintiff's memorandum constitute an improper "discipline" of plaintiff. The existence of disputes as to these and possibly other fundamentally material facts clearly precludes the granting of plaintiff's motion. *See Petrozza*, 602 F.Supp. 137.

Plaintiff's motion for summary judgment is therefore denied.

### III.  CONCLUSION

For the reasons set forth throughout this opinion, defendants' motion to dismiss and plaintiff's motion for summary judgment are both denied.  Counsel for the parties are to appear before the Court for a conference on Monday, April 6, 1987, at 9:00 A.M.

SO ORDERED.