3,847,072

**Fig. 5**

**Fig. 6**

Anthony H. MANZANARES, Appellant,

v.

SAFEWAY STORES, INC., a Maryland
Corporation, and International Brother-
hood of Teamsters, Local No. 435, Ap-
pellees.

No. 77–1690.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 28, 1978.

Decided March 12, 1979.

Paul A. Baca, Denver, Colo., on brief, for appellant.

Gregory A. Eurich, of Holland & Hart, Denver, Colo., argued and on brief, for appellee, Safeway Stores, Incorporated.

Martin D. Buckley, of Hornbein, MacDonald & Fattor, P.C., Denver, Colo., on brief, for appellee, International Brotherhood of Teamsters, Local No. 435.

Before SETH, Chief Judge, and LEWIS and BARRETT, Circuit Judges.

SETH, Chief Judge.

The plaintiff brought this action for injunctive relief and damages under 42 U.S.C. § 1981 only. The plaintiff asserts that relief is sought " . . . with respect to the unlawful employment practices of the defendant, Safeway Stores, Inc., . . . and the unfair, discriminatory representation afforded to the plaintiff by defendant Teamsters Local . . . "

The plaintiff was discharged by Safeway, and charges of theft of Safeway property were brought against him. He was acquitted and Safeway rehired him but without the seniority he had before the incident, and without "back pay."

■ The plaintiff describes himself in the complaint as of "Mexican American descent," and alleges that " . . . Anglo employees of the Company, who have admitted to thefts of Company property have been subjected to suspension rather than discharge . . . "; also that the " . . . defendant Union failed to represent the plaintiff as it represented its Anglo members in the past." This allegation apparently refers to grievance procedures sought to be instituted by plaintiff. Plaintiff alleged that the acts of both defendants " . . . were perpetrated upon the plaintiff because of his race and/or national origin."

The defendants filed motions to dismiss for failure to state a claim. More particularly reference in the motions was made to the "national origin" allegations in the complaint and the assertions that the protection afforded by 42 U.S.C. § 1981 was applicable only to discrimination based on race, color, or alienage.

The trial court granted the motions to dismiss. The order states that it was concluded that national origin does not give "standing" for a section 1981 claim, " . . . and upon the conclusion that relief under § 1981 is available only for discrimination only on the basis of race or color, . . . "

Thus the sole issue on this appeal is whether the allegations in the complaint that plaintiff was discriminated against because he was of "Mexican American descent," and the employees who were alleged to have received different treatment were "Anglos," were sufficient to permit plaintiff to seek relief under 42 U.S.C. § 1981.

Of course, section 1981 makes no mention of race, national origin, or alienage. The only reference is that "all persons" shall have described rights and benefits of "white citizens." Thus the standard against whom the measure was to be made were the rights and benefits of white citizens. The measure is group to group, and plaintiff has alleged that the "group" to which he belongs—those he describes as of Mexican American descent—is to be measured against the Anglos as the standard. This is perfectly clear and well understood in the context, and in the geographical area concerned. The allegation is direct that discrimination was directed to members of his group, and to him individually because of his affiliation. We hold that this was sufficient to have withstood the motions to dismiss. In this holding we consider that Mexican American, Spanish American, Spanish-surname individuals, and Hispanos are equivalents, and it makes no difference whether these are terms of national origin, alienage, or whatever. It is apparent that a group so described is of such an identifiable nature that the treatment afforded its members may be measured against that afforded the Anglos.

Thus plaintiff has alleged that there has been or is discrimination against him by defendants by reason of the fact he is of Mexican American origin, and this is a sufficient identification of a group within the protection of section 1981. The group to group comparison or contrast is made, and with the other allegations a cause of action is alleged. This is a failure of "any person" to have the rights of "white citizens." We considered some aspects of this issue in *Valdez v. Van Landingham,* Tenth Circuit, No. 76–1373, and in *Chicano Police Officer's Ass'n v. Stover,* 526 F.2d 431 (10th Cir.), *vacated and remanded,* 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181, and on remand 552 F.2d 918 (10th Cir.).

In *Chicano Police Officer's Ass'n,* the Supreme Court remanded for consideration of a discriminatory purpose, referring to *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597. Thus the Supreme Court did not treat the issue with which we are here concerned. In both the opinions of this court in *Chicano Police Officer's Ass'n,* we treated a complaint based on 42 U.S.C. §§ 1981, 1983, and 1985. No Title VII claim was made. The considerations present under the several sections were not separately treated. The opinion at 526 F.2d 431 was concerned primarily with standing. The second opinion was directed to the *Washington v. Davis* issue of discriminatory intent or purpose. The opinion did not consider directly the issue before us now as separate from the sections 1983 and 1985 aspects. It is apparent that our holding in this case is consistent with the *Chicano Police Officer's* cases, and carries forward the concepts therein commenced.

In *Valdez v. Van Landingham,* No. 76–1373 (Tenth Circuit), we considered an allegation of discrimination arising from plaintiff's name. We stated in that opinion, citing *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493:

" . . . The issue is whether a Spanish surname constitutes a 'racial' class which is protected by section 1981. The term 'race' in our language has evolved to encompass some non-racial but ethnic groups. This Circuit has recognized Spanish speaking or Spanish-surnamed Americans as a minority for purposes of sections 1981, 1983, and 1985(3)."

We cited, after the above quotation, *Chicano Police Officer's Ass'n v. Stover,* 526 F.2d 431 (10th Cir.), and noted the remand. We also stated that the trial court was " . . . in error to exclude Spanish-surnamed persons as a protected group."

■ The purpose of the Civil Rights Act of 1866 is apparent. *See The Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189; *Georgia v. Rachel,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925. The Supreme Court has made many references to "racial" discrimination in 1981 cases. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493; *Johnson v. Railway*

*Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295. We must read these cases that section 1981 is directed to racial discrimination primarily, but is not necessarily limited to the technical or restrictive meaning of "race." We have considered carefully *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493, with its references to discrimination against "whites." This is significant in equating "whites" with "other persons." As to section 1981, the Court there said:

> "We have previously held, where discrimination against Negroes was in question, that § 1981 affords a federal remedy against discrimination in private employment on the basis of race . . ."

(The Court cites *Johnson, Runyon,* and *Jones.*) The Court in *Santa Fe Trail* clearly and directly holds that section 1981 applies to "whites" as being with the "all persons" phrase. The legislative history is fully described to support the view that section 1981 does protect white persons. Thus here the plaintiff by the allegations in the complaint has placed himself within this "all persons" protection. The Court in *Santa Fe Trail* held the trial court was in error in dismissing petitioner's claims on the ground that white persons were not protected. We must also so hold in the case before us.

■ Section 1981 does not apply to sex or religious discrimination. *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415; *Doski v. M. Goldseker Co.,* 539 F.2d 1326 (4th Cir.); *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir.). A number of cases have held that "national origin" is not enough. *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1 (E.D.Pa.); *Martinez v. Hazelton Research Animals, Inc.,* 430 F.Supp. 186 (D.Md.); *National Ass'n of Government Employees v. Rumsfeld,* 413 F.Supp. 1224 (D.D.C.).

■ It is also clear from the cases that Title VII and section 1981 are not identical. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295; *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189. The proof is different, *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597, at least as to discriminatory intent as to constitutional claims. The Court said: "We have never held that the constitutional standard for adjudicating claims of invidious racial discrimination is identical to the standards applicable under Title VII, and we decline to do so today." Thus there is a difference and in some instances the plaintiff has a choice between the two. That there is a difference, and that there may be a choice, does not in itself lead us to any particular conclusion in this case.

Again, there are not Title VII allegations in the case before us. Also the section 1983 and section 1985 cases are, of course, quite different by reason of the great difference in the wording of the sections, and the equal protection aspects thereof.

If "white citizens" means a race, which technically does not seem particularly clear, it would seem that a group which is discriminated against because they are somehow different as compared to "white citizens" is within the scope of section 1981. We cannot consider this as a "national origin" case and that alone. Prejudice is as irrational as is the selection of groups against whom it is directed. It is thus a matter of practice or attitude in the community, it is usage or image based on all the mistaken concepts of "race." Webster's Third New International Dictionary includes in a lengthy definition of race a class of individuals with common characteristics, appearance, or habits. Also, "In technical discriminations, all more or less controversial and often lending themselves to great popular misunderstanding or misuse, RACE is anthropological . . . implying a distinct physical type . . ." The allegations in this case thus equate the prejudices to those based on race. The allegations demonstrate that the defendants may be poor anthropologists, but the prejudice is asserted to be directed against plaintiff in contrast to the Anglos. This in our view is sufficient. It is equivalent to the "all persons" compared to "white citizens" discrimination contemplated by section 1981. *See Apodaca v. General Electric Co.,* 445 F.Supp. 821 (D.C.N.M.)

It would not seem to serve a useful purpose to analyze the *reasons* for the acts of prejudice, as that can be left to the sociologists. We are not considering prejudice based on sex or religion, as those are wholly outside the basic framework of section 1981 as above indicated. It is sufficient for our purposes that as a matter of common knowledge, and as described in the opinions, a prejudice as alleged in this complaint does exist. It is directed against persons with Spanish surnames. It is a group whose rights can be measured against the standard group or control group referred to in section 1981.

We must hold that the trial court erred in granting the motion to dismiss the complaint, and the case is reversed and remanded for further proceedings.