**Saul ZAPATA, et al., Plaintiffs,**

v.

**IBP, INC., Defendant.**

**No. Civ.A. 93–2366–EEO.**

United States District Court,
D. Kansas.

Sept. 29, 1998.

P. John Brady, R. Lawrence Ward, James C. Sullivan, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, John L. Hampton, Hampton Law Office, Lawrence, KS, for Plaintiffs.

Robert L. Driscoll, Kathy Perkins Brooks, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Russell P. Wright, Tina M. Hernandez–Sabag, IBP, Inc., Dakota City, NE, Shelly L. Freeman, John R. Phillips, Blackwell Sanders Peper Martin, LLP, Kansas City, MO, Sarah R. Saldana, Michele Baird, Karen B. Peck, Baker & Botts, L.L.P., Dallas, TX, for IBP Inc, Defendant.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant IBP, Inc.'s motion for summary judgment against plaintiff Saul Zapata (Doc. # 479). Zapata has responded and opposes the motion. IBP, Inc. ("IBP") has filed a reply, and the matter is ready for ruling.

For the reasons set forth below, the motion is granted as to his Title VII claims and denied as to his section 1981 claims.

Zapata contends that he was subjected to harassment based on his national origin, ancestry, ethnicity and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. In addition, Zapata contends that he was wrongfully discharged because of his national origin, ancestry, ethnicity, and race, also in violation of Title VII and § 1981. In defense, IBP maintains that Zapata's Title VII claims are barred for failure to exhaust administrative remedies, and for failure to timely file a charge of discrimination with the appropriate state or federal administrative agency. Additionally, IBP contends that Zapata was terminated not as a result of his national origin, ancestry, ethnicity, or race, but rather was discharged in accordance with IBP's neutrally-applied leave of absence policy.

### I. All Plaintiffs Have Stated a Claim Pursuant To 42 U.S.C. § 1981.

 Defendant IBP moves for summary judgment on plaintiffs' section 1981 claims on the ground that plaintiffs have alleged only national origin discrimination, which is not cognizable under section 1981. Defendant maintains that plaintiffs must include a claim of "race" discrimination to maintain a section 1981 claim. Defendant relies entirely on plaintiffs' allegations in their Second Amended Complaint, while ignoring the pretrial order. The pretrial order specifically includes plaintiffs' allegations of discrimination based on "national origin, ancestry, ethnicity and race." *See* 5/16/97 Pretrial Order at 2, 3, 6–8, 10–24. Although defendant objected to the allegations in the pretrial order based on "ancestry, ethnicity and race," the court effectively overruled defendant's objection by including these allegations in the final pretrial order. Defendant did not seek reconsideration of the pretrial order. It is well established that the pretrial order supersedes all pleadings and controls the subsequent course of the case. *See Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 667 (10th Cir.1991); Rule

16(e) of the Federal Rules of Civil Procedure; Rule 16.2(c) of the Rules of Practice for the District of Kansas. Accordingly, plaintiffs clearly have stated a claim under section 1981 based on their allegations in the pretrial order.

■ Even if we reviewed the sufficiency of plaintiffs' section 1981 claim under the Second Amended Complaint, rather than the pretrial order, we would find that plaintiffs' allegations are sufficient to state a claim. Rule 8(a) of the Federal Rules of Civil Procedure merely requires that a pleading which sets forth a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although defendant's argument is raised in the context of a motion for summary judgment, defendant essentially contends that plaintiffs have failed to state a claim under section 1981. In these circumstances, the court must view all reasonable inferences in favor of the plaintiffs and the pleadings must be liberally construed. *See Swanson v. Bixler* 750 F.2d 810, 813 (10th Cir.1984). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In a tax case, the Tenth Circuit noted that "while it may have been proper [previously] . . . to rely upon 'magic words' in a complaint, notice pleading under the rules of civil procedure and the tax code now emphasize function instead of form, and economic reality rather than labels." *Gail v. United States,* 58 F.3d 580, 583 (10th Cir. 1995) (citing *Alexander v. City of Chicago,* 994 F.2d 333, 340 (7th Cir.1993)). Similarly, courts generally recognize that it is "improper to dismiss a claim which raises a cognizable cause of action where that claim is merely mislabeled, in view of the command of F.R.Civ.P. 8(f) that '(a)ll pleadings shall be so construed as to do substantial justice.'" *Voytko v. Ramada Inn,* 445 F.Supp. 315, 325 (D.N.J.1978) (citations omitted).

Section 1981(a) provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property *as is enjoyed by white citizens,* and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981 (emphasis added). The Tenth Circuit has recognized that section 1981 prohibits race discrimination, not discrimination based upon national origin per se. *See Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 n. 7 (10th Cir.1991); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971–72 (10th Cir.1979). Although section 1981 does not apply to discrimination based solely on the nation of one's origin, courts have noted that the concept of race discrimination under section 1981 is quite broad. The Supreme Court has held: .

> Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory. The Court of Appeals was thus quite right in holding that § 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens." It is clear from our holding, however, that a distinctive physiognomy is not essential to qualify for § 1981 protection. If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981.

*Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (footnote omitted); *see Daemi,* 931 F.2d at 1387 n. 7 ("The concept of race under § 1981 is broad. It extends to matters of ancestry which are normally associated with nationality, not race in a biological sense.").

The Tenth Circuit has noted that "often the line between national origin discrimination claims under Title VII and racial discrimination claims under § 1981 is 'not a bright one'" and that the concepts of "race" and "national origin" overlap to a significant degree. *Daemi*, 931 F.2d at 1387 n. 7 (quoting *Saint Francis College*, 481 U.S. at 614, 107 S.Ct. 2022 (Brennan, J., concurring)). In *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968 (10th Cir.1979), the Tenth Circuit evaluated the sufficiency of a section 1981 claim brought by a Mexican American:

> Of course, section 1981 makes no mention of race, national origin, or alienage. The only reference is that "all persons" shall have described rights and benefits of "white citizens." Thus the standard against whom the measure was to be made were the rights and benefits of white citizens. The measure is group to group, and plaintiff has alleged that the "group" to which he belongs—those he describes as of Mexican American descent—is to be measured against the Anglos as the standard. This is perfectly clear and well understood in the context, and in the geographical area concerned. The allegation is direct that discrimination was directed to members of his group, and to him individually because of his affiliation. We hold that this was sufficient to have withstood the motions to dismiss. In this holding we consider that Mexican American, Spanish American, Spanish-surname individuals, and Hispanos are equivalents, and it makes no difference whether these are terms of national origin, alienage, or whatever. It is apparent that a group so described is of such an identifiable nature that the treatment afforded its members may be measured against that afforded the Anglos.

> Thus plaintiff has alleged that there has been or is discrimination against him by defendants by reason of the fact he is of Mexican American origin, and this is a sufficient identification of a group within the protection of section 1981. The group to group comparison or contrast is made,

and with the other allegations a cause of action is alleged.

*Id.* at 970.

Here, we find that plaintiffs have sufficiently stated a claim under section 1981 in their Second Amended Complaint. Plaintiffs allege that they "have the same national origin; they are either Mexican–American or native-born Mexicans." Second Am. Compl. ¶ 2; *see id.* ¶ 24 ("The class of plaintiffs is defined as all employees of defendant IBP whose national origin is Mexican or Mexican–American."). Plaintiffs clearly have alleged discrimination based on something more than their birthplace because not all of the plaintiffs apparently were born in Mexico. This conclusion is further supported by the fact that four of the plaintiffs do not even allege in the Second Amended Complaint where they were born. *See id.* ¶¶ 12, 15, 17, 19. In addition, we note that plaintiffs allege in the Second Amended Complaint differential treatment between Mexicans and non-Mexicans. *See id.* ¶¶ 9, 13, 15, 17, 18, 21. For example, plaintiff Pedro Lira alleges he is of Mexican national origin but does not state his birthplace in contrast to 10 of the other 14 plaintiffs. Plaintiff Lira then alleges that he was "denied the rights and privileges given to other employees of defendant IBP who are not Mexican." *See id.* ¶ 17. The alleged name calling referenced in the Second Amended Complaint also suggests that plaintiffs' claims involve more than simply "national origin" discrimination in a limited sense. *See id.* ¶ 30(f). In sum, we find that plaintiffs have sufficiently stated a claim under Section 1981 because their allegations are not limited to discrimination based on the nation of their origin, but rather their allegations also encompass discrimination based on ethnicity and ancestry. *See Saint Francis College*, 481 U.S. at 613, 107 S.Ct. 2022.

Our reading of the Second Amended Complaint is consistent with our prior rulings in this case. Magistrate Judge Rushfelt held that "[b]oth the pleadings and prior discovery motions suggest the probability that the discrimination claims of plaintiffs more probably arise from their common ethnicity and ancestry, as persons of Mexican or Mexican American heritage, rather than as people

sharing a common national origin in terms of political or geographical boundaries or birthplace." 9/1/95 Mem. & Order at 5. Likewise, the court recognized, in ruling on plaintiffs' motion for class certification, that "[s]imply because a number of Mexican–American workers may harbor animosity towards Mexican workers is not clear evidence that their interests or claims in the case are antagonistic: indeed, *both groups are claiming that they were discriminated against because of their Mexican ethnicity or ancestry.*" 5/15/96 Mem. & Order at 18 (emphasis added); *see id.* at 13 (noting plaintiffs' allegations regarding "the use of racial epithets"); *id.* at 32 (denying plaintiffs' motion to certify class consisting of workers of "Mexican ethnicity or ancestry").[1]

 The purposes of the notice pleading requirements of rule 8(a) are "to give the defendant fair notice of the claims against him" to enable him to adequately respond to the allegations. *See Evans v. McDonald's Corp.,* 936 F.2d 1087, 1091 (10th Cir.1991); *Kohn v. American Housing Found. I, Inc.,* 170 F.R.D. 474, 476 (D.Colo.1996); *see also Ball Corp. v. Xidex Corp.,* 967 F.2d 1440, 1443 (10th Cir.1992) (purposes of notice pleading requirements are served if plaintiff is put on notice well in advance of trial of the nature of the defense asserted) (citation omitted). Whether plaintiffs here labeled the discrimination "racial" or "national origin" in their complaint, defendant was on notice that plaintiffs' claims involved allegations of discrimination against Mexicans and Mexican–Americans in various forms, including the use of racial epithets. The purposes of the notice pleading requirements were satisfied in this case and defendant was able to adequately prepare a responsive pleading. We also note that IBP was put on notice of the nature of plaintiffs' claims early in the discovery process by plaintiffs' interrogatory answers. At least twelve of the plaintiffs made specific references to "racial discrimi-

nation" in their answers to defendant's first set of interrogatories. *See, e.g.,* O. Cabral's Answers at 7 (Dec. 15, 1993); A. Martinez's Answers at 7 (Jan. 14, 1994); F. Ponce's Answers at 7 (Dec. 15, 1993); M. Sigala's Answers at 6 (Jan. 14, 1994); G. Vasquez's Answers at 8 (Dec. 15, 1993).

While the court certainly believes that plaintiffs should have included allegations of discrimination based on race, ancestry, and ethnicity in their complaint, the absence of those specific labels or titles should not detract from the heart of plaintiffs' allegations—discrimination against Mexicans and Mexican–Americans. Magistrate Judge Rushfelt stated in an earlier order in this case:

> The foregoing cases suggest that the claims of the named plaintiffs are probably pleaded adequately as violations of 42 U.S.C. § 1981 to the extent they allege intentional discrimination because they are Mexican or Mexican American. The presence or absence of the labels "race" or "national origin," therefore, should not detract from the more substantive allegations which otherwise qualify their claims under the statute. Whether their wrongs be labeled with "race" or "national origin," the named plaintiffs who allege discrimination because they are Mexican or Mexican American should have satisfied the requirements of § 1981 to protect the rights of "All persons ... to the full and equal benefit of all laws ... as is enjoyed by white citizens...." Such interpretation accords with the concept of justice set forth in Fed.R.Civ.P. 1.

9/1/95 Mem. & Order at 10. IBP contends that Magistrate Judge Rushfelt's statements conflict with this court's ruling, in reviewing Magistrate Judge Rushfelt's order, that plaintiffs could not belatedly add a new theory of recovery by amending their complaint to assert race discrimination claims. *See*

---

1. IBP argues that the court's February 20, 1997 order precludes plaintiffs' race discrimination allegations and that plaintiffs accordingly cannot state a claim under section 1981. In our February 20 order, we denied plaintiffs' request to add allegations that each plaintiff "has filed a claim of racial and national origin discrimination with the Equal Employment opportunity Commission

(EEOC) in a timely manner." The court's ruling was limited to plaintiffs' attempt to assert their procedural compliance in bringing a Title VII race claim where plaintiff Sigala's EEOC charge did not assert race discrimination. The court did not rule on the issue presented in the instant motion, *i.e.,* whether plaintiffs have stated a claim under section 1981.

10/6/95 Mem. & Order at 4. We find nothing conflicting in the two orders which reached the very same result. The court's October 6, 1995 order did not specifically address the tangential issues discussed by Magistrate Judge Rushfelt regarding whether the denial of plaintiffs' motion for leave to amend would have any practical effect on the viability of plaintiffs' section 1981 claims. While we are not bound by Magistrate Judge Rushfelt's analysis of this issue in the context of the motion to amend, we find Magistrate Judge Rushfelt's statements on the issue generally accurate and persuasive in addressing the instant motion for summary judgment.

For the above reasons, the court concludes that all plaintiffs have sufficiently stated a claim pursuant to section 1981. Defendant's motion for summary judgment on this issue is denied.

## II. Administrative Exhaustion Requirements and Plaintiff Zapata's Title VII Claims.

■ Defendant argues that it is entitled to summary judgment on Zapata's Title VII claims because Zapata's Title VII claims "have not been tolled, and are barred for failure to exhaust administrative remedies and for failure to file a timely charge of discrimination with the EEOC." IBP's Brief at 7. In response, Zapata maintains that he timely filed EEOC charges "in his own right," and therefore does not rely on a tolling argument, and does not rely on Sigala's EEOC charge.

The court notes that Zapata does not invoke the single-filing rule as articulated in *Lange v. Cigna Individual Financial Services Company,* 759 F.Supp. 764 (D.Kan. 1991), and Zapata has specifically disclaimed any reliance on Sigala's EEOC charge. Sigala was the sole plaintiff to file a charge of discrimination with the EEOC before initiating this lawsuit. By disclaiming tolling and any reliance on Sigala's charge, Zapata has removed his foundation for his initial appearance in this suit years before he filed a charge of discrimination. He does not cite

any authority for the proposition that he should be allowed to participate in a suit for several years without having filed an EEOC charge, and without any reliance on Sigala's charge. Zapata simply has not met his burden of proving that he has timely complied with the administrative exhaustion requirements of Title VII.[2] Summary judgment therefore is granted in favor of IBP as to all of Zapata's Title VII claims.

## III. Standards for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. 2505.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for

2. In light of our ruling on this issue, we need not consider IBP's alternative argument, that the scope of Sigala's EEOC charge of discrimination does not encompass all of Zapata's allegations in the complaint.

which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1.

## IV. Plaintiff Zapata's Discriminatory Termination Claim.

IBP moves for summary judgment on Zapata's claims under Title VII and section 1981 for discriminatory termination. First, IBP maintains that Zapata is precluded from asserting a claim of discriminatory termination, because such a claim was not specifically pleaded in the Second Amended Complaint. Second, IBP contends that even if Zapata has properly raised such a claim, it is entitled to summary judgment because Zapata has failed to produce sufficient evidence of a prima facie case of discrimination. Third, IBP asserts that even if Zapata has established a prima facie case, IBP is still entitled to summary judgment because he has failed to produce sufficient evidence that his termi-

nation under IBP's leave of absence policy was a pretext for unlawful discrimination.

■ IBP first contends that it is entitled to summary judgment on Zapata's discriminatory termination claim, because Zapata did not personally plead in the Second Amended Complaint that he was discharged on the basis of his national origin. Defendant relies entirely on Zapata's allegations in the Second Amended Complaint, while ignoring the pretrial order. The pretrial order specifically includes Zapata's allegations of discriminatory termination, stating, in part: "Mr. Zapata was terminated as a result of his national origin, ethnicity, ancestry and race.... Mr. Zapata was recently terminated as a result of IBP's pattern and practice of discrimination under the pretext of 'extended medical leave of absence.'" *See* 5/16/97 Pretrial Order at 24. To the extent defendant objected to including in the pretrial order Zapata's allegations of discriminatory termination, the court effectively overruled any such objection by including these allegations in the final pretrial order. Defendant did not seek reconsideration of the pretrial order. It is well established that the pretrial order supersedes all pleadings and controls the subsequent course of the case. *See Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 667 (10th Cir.1991); Rule 16(e) of the Federal Rules of Civil Procedure; Rule 16.2(c) of the Rules of Practice for the District of Kansas. Accordingly, Zapata clearly has stated a claim for discriminatory termination based on his allegations in the pretrial order.

■ IBP next contends that it is entitled to summary judgment, because Zapata is unable to establish a prima facie case for wrongful termination. Specifically, IBP argues that Zapata has not shown that similarly-situated persons of non-Mexican national origin were treated more favorably. IBP argues that Zapata has not produced evidence that he was replaced by someone of a different national origin. As we held with respect to Sigala's claim, under the particular facts and circumstances of this case, we are unpersuaded by IBP's argument that Zapata has not stated a prima facie case because he has not shown he was replaced by someone

of a different national origin. We recognize that "[t]he facts necessarily vary in Title VII cases, and the specification ... of the prima facie proof required ... is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

IBP contends that even if Zapata has stated a prima facie case, IBP has proffered a legitimate, non-discriminatory reason for discharging him, and Zapata has not demonstrated that his separation from employment was a pretext for unlawful national origin discrimination. A plaintiff must present enough evidence to support an inference that the employer's reason was merely pretext, by showing either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1121–22 (10th Cir.1991). "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.' " *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997).

Here, IBP has presented the affidavit of Roger Brownrigg, personnel director for IBP's Emporia facility. Brownrigg states that "Zapata was separated from employment on May 11, 1996 with IBP pursuant to IBP's neutral leave of absence policy that employees who were off work and on a LOA status for a period exceeding twelve (12) months were terminated. Zapata's separation from employment was in accordance with IBP's neutrally applied leave of absence policy." IBP's Appendix I, Exhibit I at 6. We have reviewed the entire record submitted regarding Zapata's claims. Viewing the record evidence in the light most favorable to Zapata, we find that genuine issues of material fact exist, precluding summary judgment on his Title VII discriminatory termination claim.

Trial courts should act with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505. *See also Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir.1973) (summary judgment is a drastic remedy, which should be approached cautiously). Out of an abundance of caution, therefore, we deny summary judgment on Zapata's discriminatory termination claims, under the belief that we will be in a much better position to make a definitive ruling after hearing the evidence at trial. Accordingly, IBP's motion for summary judgment on this claim is denied.

Plaintiff also asserts a claim of discriminatory termination pursuant to 42 U.S.C. § 1981. Plaintiff's section 1981 claim is premised on the same conduct at issue in the Title VII claim discussed above. "[I]n racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir.1991). Thus, summary judgment on plaintiff's section 1981 claim must be denied for the same reasons as those discussed with respect to plaintiff's Title VII claim.

Finally, IBP moves for summary judgment as to all of Zapata's transfer and promotion claims. As we previously noted, Zapata, in his response brief, clarifies that the only plaintiff making a discrimination claim regarding transfer and promotions is Gustavo Vasquez. Zapata's Brief at 101, n. 21. Thus, IBP's motion for summary judgment on this issue is denied as moot.

IT IS THEREFORE ORDERED that defendant IBP's motion for summary judgment as to plaintiff Saul Zapata (Doc. # 479) is granted as to his Title VII claims, and denied as to his section 1981 claims.